UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GROVER C. HOOKS,  } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 2:16-cv-01522-RDP |
| } | |
| NANCY A. BERRYHILL, Acting } | |
| Commissioner of Social Security, } | |
| } | |
| Defendant. } | |

**MEMORANDUM OF DECISION**

This matter comes before the court on the Motion to Incorporate New Evidence Into the Records Evidence pursuant to 42 U.S.C. § 405(g) filed by Plaintiff Grover C. Hooks on July 10, 2017. (Doc. # 15). In his Motion, Plaintiff contends that new evidence, not previously considered by the Administrative Law Judge ("ALJ") or Appeals Council, should be submitted into the record. For the reasons set forth below, the court finds that the Motion is due to be granted, and this case is due to be remanded to the ALJ for consideration of the new evidence.

**I.   Proceedings Below**

Plaintiff filed his application for disability insurance benefits ("DIB") on January 10, 2014, alleging disability beginning June 18, 2013. (Tr. 24, 62). The Social Security Administration ("SSA") initially denied the claim on March 4, 2014. (Tr. 24, 62). On December 7, 2015, the ALJ determined that Plaintiff was not disabled under Sections 216(i) and 223(d) of the Social Security Act. (Tr. 32).

On February 1, 2016, Plaintiff requested review of the ALJ's decision from the Appeals Council. (Tr. 19-20). On April 13, 2016,[1] Plaintiff, through his attorney, submitted new medical evidence to the Appeals Council. (Tr. 193). The Appeals Council added the evidence submitted on April 13, 2016 to the record, and that evidence is not the focus of the motion currently before this court. (Tr. 6). The Appeals Council summarily denied Plaintiff's request for review on July 15, 2016. (Tr. 1-3). Following that denial, the final decision of the Commissioner became a proper subject of this court's appellate review. *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (finding the ALJ decision final for purposes of judicial review when the Appeals Council denied review).

Plaintiff was 60 years old at the alleged onset of his disability, and 62 at the time of the ALJ's December 7, 2015 decision. (Tr. 30; Pl. Br. 6). Plaintiff has a high school education and worked for all relevant periods as a garbage collector driver (DOT Code 905.663-010). (Tr. 30, 52, 131-36). The ALJ found Plaintiff to have the following severe impairments: narcolepsy without cataplexy, diabetes mellitus, and osteoarthritis. (Tr. 26, 67, 164). Plaintiff has not engaged in substantial gainful activity since June 18, 2013, when his narcolepsy allegedly caused an accident while Plaintiff was driving a garbage truck. (Tr. 26, 50-51, 124).

Plaintiff claims that his narcolepsy causes extreme tiredness at least three times a day. (Tr. 53). Before being diagnosed and prescribed medication, Plaintiff had no indication that these episodes would overtake him, or that they may cause a vehicle accident. (Tr. 51). With medication, however, Plaintiff is alerted to when his narcolepsy may overtake him, giving him time to pull over (if driving) and retire for a 30-minute nap to remedy the extreme tiredness. (Tr. 53-54). Plaintiff saw Dr. Ozgun for the narcolepsy once every 3-4 months. (*See* Tr. 298-99). Dr.

---

[1] Counsel's letters are dated April 13, 2015. The court determines that the actual date of the letters was April 13, 2016, as they reference the ALJ's December 2015 opinion (Tr. 32, 193).

Ozgun recommended that Plaintiff plan an afternoon nap of 15-30 minutes to relieve symptoms not remedied by his prescribed medications. (Tr. 302).

The Commissioner assigned Plaintiff a residual functional capacity ("RFC") of medium work, with the exception that he is prohibited from all exposure to moving hazards and heavy machinery. (Tr. 68-71). The non-examining state agency physicians agreed with the RFC based on the medical records from the sleep specialist Dr. Ozgun and the primary care physician Dr. Thomas C. Pendleton. (Tr. 63-72). It was determined that Plaintiff could not return to his former job. (Tr. 30). However, the vocational expert ("VE") opined that Plaintiff enjoyed alternative avenues of employment which could be performed by someone cleared to work at the medium level of employment with the restrictions resulting from his medical diagnosis of narcolepsy. (Tr. 57-59). Additionally, the Commissioner found that Plaintiff's claims regarding his exertional limitations were not credible because of information found in his Functional Report. (Tr. 29). The ALJ discounted Plaintiff's credibility in part because the Functional Report indicated that he continued to drive and do activities such as take his granddaughter to school, go to church, and other errands. (Tr. 157). Therefore, based on Plaintiff's residual functional capacity, the VE's recommendation of available work, and the discounted credibility determination based on the Functional Report, the Commissioner found that Plaintiff was not disabled. (Tr. 32).

Importantly, the record before the ALJ contained very little relevant medical evidence concerning Plaintiff's arthritis/osteoarthritis. The non-examining state agency physicians agreed with the medium level employment RFC assigned to Plaintiff, stating that Plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds. (Tr. 69).[2] At that time, the ALJ's RFC analysis was supported by substantial evidence because there was no medical evidence in the

---

[2] The record from the Field Office Disability Report indicates occasional and frequent lifting of only 25 pounds. (Tr. 147). It was determined, however, that Plaintiff had the capacity to lift up to 50 pounds occasionally in his RFC before consideration of the evidence from Dr. Snow and the knee replacement surgery now being offered.

record relating to the osteoarthritis or the physical limitations the condition allegedly imposed on Plaintiff. Indeed, the treatment notes suggested that Plaintiff had full range of motion and could exercise five times a week. (Tr. 28).

After the ALJ found that Plaintiff was not disabled, Plaintiff submitted new evidence to the Appeals Council from Dr. Snow, which related exclusively to his arthritis/osteoarthritis condition affecting his knees and shoulders. (Tr. 340-351). The medical reports submitted to the Appeals Council indicated that Plaintiff has consistently complained of shoulder pain and knee pain to Dr. Snow. (Tr. 347). No medical records from Dr. Snow were present in the record prior to the Appeals Council review.

Dr. Snow saw Plaintiff six times between June 21, 2012 and October 12, 2015. (Tr. 343-47). Plaintiff's shoulders caused him pain due to crepitation, and Dr. Snow reported that his range of motion was limited. (Tr. 343-47). With regard to Plaintiff's knee, Dr. Snow's records stated on June 21, 2012, "I will see him back in 1-3 months if he wishes to consider something else on his knee. He might want to investigate to see if there is anything could be done short of a total knee. However, probably he would need a total knee." (Tr. 347). The Motion now before the court requests to introduce new medical evidence[3] showing that Plaintiff underwent surgery for a total knee replacement on April 11, 2017. (Doc. # 18-1 at 2).

**II.    Standard of Review**

When a claimant presents new evidence first to the district court, the court cannot consider the new evidence for the purposes of a *sentence four* remand because "a reviewing court is limited to the certified administrative record in examining the evidence;" however, a

---

[3] The motion before the court requests admission of new evidence under sentence four. This court is prohibited from considering new evidence not contained in the administrative record, and it is certainly not proper under sentence four. Because the court "may at any time order additional evidence to be taken before the Commissioner of Social Security," counsel's failure to plead the proper part of section (g) does not cause Plaintiff's motion to fail. 42 U.S.C. § 405(g).

4

federal court should remand a case to the Commissioner to consider such evidence if a claimant makes a sufficient showing under *sentence six. Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1267-68 (11th Cir. 2007); *see also Caulder v. Bowen*, 791 F.2d 872, 876 (11th Cir. 1986) ("[A]lthough the federal court does not examine evidence that was not considered during administrative proceedings, it should remand a case to the Secretary to consider such evidence if a claimant makes a sufficient showing [under sentence six].").

To obtain a remand under sentence six of 42 U.S.C. § 405(g), a claimant must establish that: (1) the evidence is new and noncumulative; (2) the evidence is "material," such that there exists a reasonable possibility of changing the administrative result; and (3) good cause exists for the failure to submit the evidence at the administrative level. *Caulder*, 791 F.2d at 877; *see also Ingram*, 496 F.3d at 1267 ("A remand to the Commissioner is proper under sentence six when new material evidence that was not incorporated into the administrative record for good cause comes to the attention to the district court."). "Furthermore, the judicial determination whether remand is necessary is a de novo proceeding." *Cherry v. Heckler*, 760 F.2d 1186, 1194 (11th Cir. 1985).

**III. Analysis**

The evidence relating to Plaintiff's knee replacement is new and noncumulative. The surgical records chronicle events which had not yet occurred at the time of the ALJ hearing or at the time of the Appeals Council review. (*See* Doc. 15-3; *see also* Doc. # 18 (Plaintiff's response with appended medical evidence)). It follows, therefore, that this evidence was neither presented to nor considered by the ALJ or Appeals Council.

The noncumulative nature of the documents is clear because they are the *only* medical records pertaining to the surgery. *See Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988);

5

*see also Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir. 1987). Moreover, the evidence is due to be submitted to the ALJ because it demonstrates ongoing treatment and calls into question the evidence which was relied upon by the ALJ. *Hutchins v. Comm'r of Soc. Sec.*, No. 7:16-cv-00676-JEO, 2017 WL 2558035 at *8 (N.D. Ala. June 13, 2017). An analysis of whether the evidence undermines the ALJ's decision leads to the second consideration of sentence six remand – whether the evidence is material.

Evidence is material if a reasonable possibility exists that it will change the administrative result. *See Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). Here, the ALJ found that the physical examinations of Plaintiff "failed to show ambulatory difficulties and showed that the claimant had no motor, sensory or neurological deficits." (Tr. 29). This led the ALJ to determine an RFC for Plaintiff of medium work with certain limitations. In coming to its conclusion, the ALJ "placed significant weight in the opinions of R. Glenn Carmichael," who in turn gave "significant weight" to the "treatment records and reports from Drs. Ozgun and Pendleton." (Tr. 29). Dr. Carmichael's report noted only that Plaintiff had a full range of motion without pain or swelling. (Tr. 70). Dr. Rabelo, another non-examining state physician, stated that the arthritis was not well developed and that the range of motion appears normal. (Tr. 67). On that basis, Dr. Rabelo agreed with the RFC in the file. (*Id.*). The evidence submitted by Dr. Snow substantially contradicts these findings. (*See* Tr. 346-47). And, since the claimant *actually had* a knee replacement for reasons of "severe degenerative arthritis of the left knee," there is need to have the ALJ reconsider its findings in light of the new evidence. (Doc. # 18-1 at 2).

The court finds that it is likely that the introduction of evidence of a total knee replacement in April 2017 may undermine some of the evidence which otherwise supported the ALJ's decision. The ALJ relied heavily on state non-examining medical experts, and they only

6

discussed the osteoarthritis as an afterthought in their reports – presumably because there were very few medical records submitted pertaining to Plaintiff's knee and shoulder issues. (*See* Tr. 262, 268, 270, 273-74) (Dr. Pendleton's inquiry into musculoskeletal problems between December 2011 and February 2014); *see also* Tr. 28 (ALJ noting no complaint of musculoskeletal symptoms between June 2013 and September 2015)). The Commissioner's medical experts should have the opportunity to consider these surgical records -- in conjunction with Dr. Snow's records -- before making their determinations.

It is possible that if Drs. Carmichael and Rabelo had seen the medical records from Dr. Snow (indicating consistent and continuous pain in the shoulder and left knee) they may have come to different medical conclusions. Furthermore, if the state doctors had received records of an *actual* knee replacement, in conjunction with Dr. Snow's findings, their reports may have given more attention to the osteoarthritis. Instead, their reports focused almost exclusively on the perceived central diagnosis of narcolepsy. (Tr. 67, 68) ("This claimant's [*sic*] main problem appears to be narcolepsy."). Additionally, the only two conditions listed under the "Impairment Diagnosis" section of the state field assessment are "Other Disorders of the Nervous System" (narcolepsy) and "Hernias," with no mention of the alleged osteoarthritis. (Tr. 68). Because the ALJ relied heavily on the opinion of Dr. Carmichael and the state's analysis of the medical records, it is likely that additional evidence relating to the osteoarthritis, which was only considered summarily, would change the conclusions of the state medical experts, and in turn the ALJ's decision.

The medical evidence presented by Plaintiff of his total knee replacement weighs against the findings that he could frequently "climb stairs/ramps, balance, stoop, kneel, crouch, and crawl." (*See* Tr. 27). The evidence of the total knee replacement is thus material because there is

7

a reasonable likelihood that it will change the decision of the ALJ. (Doc. # 18-1 at 4) (stating that Plaintiff "has advanced arthritis in both knees"). Furthermore, the surgical records are chronologically relevant because they concern severe impairments that existed during the period of time before the ALJ's decision. *See Hobbs v. Colvin*, No. 5:15-CV-389-KOB, 2016 WL 5375660, at *2 (N.D. Ala. Sept. 26, 2016).

Finally, because the evidence did not exist at the time of the administrative proceedings, there was good cause for failing to provide it at that time. *See Cherry*, 760 F.2d at 1192 ("Good cause for failing to present evidence earlier may exist where, as here, the evidence did not exist at the time of the administrative proceeding.").

## IV. Conclusion

In summary, under Eleventh Circuit precedent, Plaintiff has shown that the medical records relating to his total knee replacement and the diagnosis which led to the surgery are new and non-cumulative, material, and that good cause exists for failing to submit the evidence earlier. This court cannot determine whether the Commissioner's decision was supported by substantial evidence until the ALJ considers this new evidence on remand. Accordingly, the Motion to Incorporate New Evidence (Doc. # 15) is due to be granted. This action is due to be remanded to the ALJ pursuant to 20 C.F.R. § 404.983 for consideration of the new surgical records. An order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this August 2, 2017.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE